BUFORD ARMSTRONG v. THE STATE.

No. 14560.   Delivered February 24, 1932.

The opinion states the case.

*Frank Judkins* and *Frank Sparks,* both of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for robbery, punishment being assessed at five years in the penitentiary.

The indictment alleges that an assault was made upon E. F. Penn, and that by such assault and violence and by putting said Penn in fear of life and bodily injury there was taken from his possession "lawful money of the United States of America of the value of more than fifty dollars," which was alleged to be the property of said Penn.

The evidence discloses that on the night of September 10th a robbery occurred at a place of business known as the "Hall Tire Company." The witness Carlton speaks of it as "his place of business." Upon the occasion of the robbery he was not present. He testified that E. F. Penn was in charge of the place at that time and had charge of the place of business just the same as if it belonged to him; that he (Carlton) was away from the place of business about forty-five minutes and upon his return Penn reported the robbery. Penn testified that about eight-thirty o'clock on the evening of September 10th three men drove into the station in a Chevrolet coach; that he was there by himself and went out to wait upon the parties; that appellant was driving the car, and stepped out and met witness, presented a pistol at him and told him to stick up his hands; that after he had put his hands up a party in the rear seat of the car levelled a shotgun on him and guarded him while appellant and the man who had been on the front seat with him went into the office of the station, rifled the cash register, got the safe, brought it out and loaded it into the car. The robbers got $91.45 in money. The next morning the safe was discovered in a pasture some distance from the point of the robbery. It had been broken open and such money as was in the safe had been taken, except a small sum in an envelope which had been overlooked. Appellant did not testify, but interposed a defense of alibi, the testi-

mony to support, which, if believed by the jury, placed appellant some 175 miles from the point where the robbery occurred at the time it was committed. Appellant was not arrested until the 18th day of September, at which time he was alone travelling in a Chevrolet coach. At the time of the arrest the officers found in the car a pistol and two shoulder holsters, and some ammunition. The pistol was a blue-steel Colt six-shooter, and was similar in size and appearance to the one claimed to have been used by appellant at the time of the robbery.

We consider the bills of exception in the order they appear in the transcript.

By bills of exceptions 1, 3, and 6 appellant presents the point that there was a variance between the allegations in the indictment and the proof, in that he claims the evidence does not support the averment that Penn was the owner of and in possession of the property alleged to have been taken at the time of the robbery. We fail to see any tangible basis to support this contention. Mr. Carlton, the manager of the Hall Tire Company, was not present when the robbery occurred. Mr. Penn was the only one connected with the business who was present at the time. It was by reason of the assault upon him that the robbery was effected. He was in actual care, control and management of the property. Mr. Carlton said Penn was "in charge of the place of business just the same as if it belonged to him."

Appellant objected to the charge of the court because in immediate connection with the paragraph submitting the state's case there was not included the issue of reasonable doubt. The subject of reasonable doubt was later in the charge applied to the case generally. The affirmative defense was an alibi. Upon that issue and in immediate connection with it the jury were told if they entertained a reasonable doubt as to the presence of appellant at the time and place where the offense, if any, was committed, to find him not guilty.

In the indictment it was alleged that appellant did "unlawfully and wilfully" make an assault upon the person of E. F. Penn, and that by said assault and by violence, and by putting the said Penn in fear of life, etc., the property described in the indictment was taken. In submitting the case the court followed the language of the indictment and required the jury to believe beyond a reasonable doubt that appellant "unlawfully and *wilfully*" made an assault upon Penn before they could convict. The charge was specifically objected to because it nowhere defined the term "wilfully." In support of his contention that such instruction was necessary appellant refers us to Madrid et al. v. State, 71 Texas Crim. Rep., 420, 461 S. W., 93 (robbery); Holt v. State, 48 Texas Crim. Rep., 559, 89 S. W., 838 (false swearing); Clay v. State, 52 Texas Crim. Rep., 555, 107 S. W., 1129 (perjury); Roberts v. State, 65 Texas Crim. Rep., 62, 143 S. W., 614 (slander); Stephens v. State, 90 Texas Crim. Rep., 245, 234

S. W. 540 (malicious mischief); Owens v. State, 19 Texas App., 242 (driving stock from accustomed range); Shubert v. State, 20 Texas App., 320 (driving stock from accustomed range). If an affense is made to depend upon the fact that it is "wilfully" done it is necessary for the trial judge to define the word "wilful." Each of the cases mentioned—save Madrid's case—was dealing with that character of offense. Hence, the cases have no application here. In Madrid's case (supra), the indictment contained three counts, the first charging assault with intent to murder, the second charging maiming, and the third charging robbery, and, as in the present case, the indictment *uselessly* averred that the assault to rob was "wilfully" committed. There the court did define the word, and accused objected because the statute definding robbery did not require that it be "wilfully" committed. The court said that the offense of robbery was such that the meaning of the word was necessarily included in the offense, but disposed of the real question by saying that accused had no ground of complaint because the court had really added an unnecessary burden to the state. It was not required under the definition of robbery (article 1408, P. C.) to allege that the assault was "wilfully" made. It was not descriptive of the offense, every element of which was averred in the indictment. The word "wilfully" could have been ignored as surplusage. The fact that the court followed the language of the indictment and incorporated in his instruction the word mentioned, without defining it, could in no way have injured appellant, regardless of whether the jury understood the legal and technical meaning of the word. They were required under the charge to find beyond a reasonable doubt that every element of the offense of robbery existed before a conviction was authorized. Article 666, C. C. P., has application here. It provides that no reversal shall follow an error in the charge unless the error was calculated to injure the rights of a defendant.

The indictment described the property taken in the robbery as "lawful money of the United States of America of the value of more than fifty dollars." The evidence shows that the property taken was $91.45 in money. No more specific description than that is found in the record. By bill of exception No. 7 appellant presents the point that the evidence does not sustain the allegation of the indictment regarding the description of the property taken. This subject is not briefed by appellant and it may be that he has abandoned it, but we advert to it briefly. The cases of Otero v. State, 30 Texas Crim. Rep., 451, 17 S. W., 1081; Perry v. State, 42 Texas Crim. Rep., 540, 61 S. W., 400, and Black v. State, 46 Texas Crim. Rep., 107, 79 S. W., 311, support the proposition advanced by appellant. However, in the latter case of Berry v. State, 46 Texas Crim. Rep., 420, 80 S. W., 630, the Otero and Perry cases were specifically overruled. The Black case is not named, but the opinion in Berry's case expressly overrules all cases in conflict with it. This

necessarily overruled the Black case. Berry's case was cited with approval in Raymond v. State, 116 Texas Crim. Rep., 595, 33 S. W. (2d) 192. The proposition advanced in bill of exception No. 7 can not be sustained. In this connection we call attention to article 1544, P. C., defining "money."

Complaint is brought forward in bill of exception 10 because the court gave no instruction on circumstantial evidence. In appellant's brief it appears that error in such omission is claimed on the theory that Penn, under the circumstances of the robbery had a meager opportunity to observe the person who assaulted him, and was under such excitement and peril that the court would not be justified in accepting his testimony as of more value than the mere expression of an opinion. Under some circumstances the theory upon which appellant relies might find support in the evidence, but we fail to discover it here. An examination of Penn's evidence both on direct and cross-examination reveals that repeatedly and without hesitation he unqualifiedly and positively identified appellant as the party who held the pistol on him, and participated in the robbery.

In bill of exception 11 appellant complains of the language of the county attorney in his closing argument in which he said, "Frank Sparks, attorney for this defendant, a couple of years ago, as county attorney of this county, asked the death penalty for a man who was identified when a Santa Claus mask was lifted from his face for just a second." The bill recites that by this language the county attorney was referring to a case against one Ratliff, the Santa Claus bandit, who was given the death penalty for robbery of a Cisco bank, and who was mobbed in jail thereafter for the murder of an uncle of the county attorney, and which case appellant claims was well known to the jurors and citizens of the county. There is no verification of this fact in the bill. The bill does not recite in what connection the argument was made. We judge from other portions of the record that Mr. Sparks, appellant's attorney, was contending that the evidence upon the point of identification, was insufficient in this case. The conclusion may be drawn from the bill that the county attorney was taking appellant's attorney to task for a position which he thought was in conflict with that urged by said attorney when he was prosecuting in the case referred to. Immediately upon objection being made to said argument the court instructed the jury not to consider it. Appellant insists that notwithstanding said instruction the argument was so improper and injurious as to require a reversal. The argument referred to ought not to have been made, but in view of the entire record, the penalty assessed, and the prompt withdrawal of the argument, we can not go so far as to characterize it as a prejudicial and injurious argument which would call for reversal.

Bills of exception 12 and 13 also complain of argument of the county attorney. They have been examined but are not regarded as of sufficient

importance to discuss in detail. They are not thought to present any error.

Bill of exception 14 reflects the following incident. After the venire had been sworn and tested by the court touching their qualifications as jurors they were retired from the court room. One G. W. Weatherby was the twelfth man called for examination. Before he was brought back into the court room state's counsel stated to the court that said venireman was under indictment in that court at that time for a felony any for that reason challenged Weatherby. The court sustained the challenge to which action appellant excepted, on the ground that there was no evidence before the court showing that the venireman and the man under indictment were one and the same person. There was made a part of this bill an indictment against George Weatherby charging him with unlawfully possessing for the purpose of sale spirituous liquor capable of producing intoxication. It is further made to appear that at the time the court ruled upon the challenge he said he desired to make a part of the bill the "habeas corpus proceedings" which he had tried. That is not incorporated in the bill, but in a qualification thereto the court said he had tried the habeas corpus case and knew therefrom that the juror was the same party under indictment. There does not appear to be an exception to the qualification of appellant's bill. The court says in connection with his qualification in which he refers to the indictment and the habeas corpus proceedings, that appellant "objected to the court taking judicial knowledge of the identity of persons." Of course, the court could not rely upon his personal information regarding the identity of the venireman with the person under indictment, but a judge may take judicial knowledge of the proceedings over which he has presided. If in the habeas corpus proceeding knowledge came to the judge from which he knew that the Weatherby under indictment was the same man called as a venireman he could take notice of that fact and act upon it. See Underhill's Crim. Ev. (3d Ed.), sec. 58; Baker v. State, 79 Texas Crim. Rep., 510, 187 S. W., 949; Dunn v. State, 92 Texas Crim. Rep., 126, 242 S. W., 1049; Miller v. State, 92 Texas Crim. Rep., 259, 242 S. W., 1040.

Finding no error in the record upon which a reversal may be properly predicated, the judgment is affirmed.

*Affirmed.*