STATE, RESPONDENT, *v.* McCOMAS ET AL., APPELLANTS.

(No. 6,179.)

(Submitted September 19, 1927.  Decided September 23, 1927.)

[259 Pac. 507.]

*Criminal   Law — Larceny — Instructions — Evidence — Invading Province of Jury Reversible Error.*

> 1.  In a prosecution for larceny of livestock, in which the state, after one of its material witnesses had testified, introduced an affidavit of the witness in possession of defendant's counsel and made before trial, contradicting his testimony given in his direct examination but claimed by him to have been made at the behest of defendants under threats, an instruction that the jury should disregard any testimony not voluntarily made was prejudicially erroneous as invading the province of the jury, which was at liberty to believe or disbelieve any evidence introduced before it, whether voluntarily or involuntarily given.

[1]  Criminal Law, 16 C. J., sec. 1999, p. 781, n. 12; sec. 2293, p. 932, n. 13; sec. 2316, p. 945, n. 13.

*Appeal from District Court, Sweet Grass County; H. J. Miller, Judge.*

JAMES G. McCOMAS and ALBERT SYLLING were convicted of having stolen sheep, and they appeal.  Reversed and remanded, with direction.

*Messrs. O'Connor & Miller* and *Mr. M. J. O'Connor,* for Appellants, submitted a brief; *Mr. James F. O'Connor* argued the cause orally.

The instruction complained of singles out a particular piece of evidence and comments upon it and advises the jury in relation to how and under what circumstances it may be considered.  There was only this one piece of evidence in the case to which such an instruction as this could possibly apply and to which therefore necessarily it would apply.  The court just as effectively singled out this affidavit and the testimony of witness Jones in connection therewith in this instruction as though he had set it forth specifically and called attention to

[80 Mont. 130.]

the testimony of witness Jones, naming him. There is little necessity in dwelling upon the law of the subject, for it is so well settled in this state as in all other states, that it is reversible error to give an instruction which singles out or emphasizes or comments upon particular parts of the evidence or gives undue prominence to isolated facts. (12 Cyc. 649; 14 R. C. L. 780; 8 Cal. Jur. 294; 24 Cal. Jur. 843; *State* v. *Schnepel*, 23 Mont. 523, at page 526, 59 Pac. 927; *State* v. *Jones*, 32 Mont. 442, at page 453, 80 Pac. 1095; *State* v. *Pippi*, 59 Mont. 116, at page 122, 195 Pac. 556; *State* v. *Kessler*, 74 Mont. 166, at page 169, 239 Pac. 1000; *State v. Tawney*, 81 Kan. 162, 135 Am. St. Rep. 355, 105 Pac. 218.)

*Mr. L. A. Foot*, Attorney General, and *Mr. S. R. Foot*, Assistant Attorney General, for Respondent, submitted a brief, the latter arguing the cause orally.

This affidavit of the witness Jones was admissible on the part of the state for one purpose only, to-wit: to show the subsequent conduct of the accused. (*State* v. *Fisher*, 54 Mont. 211, 169 Pac. 282; *State* v. *Lucy*, 24 Mont. 295, 61 Pac. 994; *State* v. *Francis*, 58 Mont. 659, 194 Pac. 304.) And that it could not be introduced by the state for the purpose of impeaching its own witness is well settled. It is our contention that the only effect of this instruction was to withdraw from the jury, if they found the facts which the state contended in connection with the execution of the affidavit were true, the right to consider this evidence as showing subsequent guilty conduct on the part of the accused. Clearly this operates to the benefit of the appellants. (*State* v. *Jones*, 32 Mont. 442, 80 Pac. 1095; *State* v. *Kanakaris*, 54 Mont. 180, 169 Pac. 42.) Furthermore, the instruction being pure surplusage, the jury were not in any way misled as far as the interests of the defendants were concerned and this court has held: ''A case will not be reversed for erroneous instruction where it appears that the jury had not been misled thereby.'' (*State* v. *Fuller*, 34 Mont. 12, 9 Ann. Cas. 648, 8 L. R. A. (n. s.) 762, 85 Pac. 369.)

It is the further contention of counsel for appellants that because there was only one witness to whose testimony the instruction could apply, the instruction was objectionable for the reason that it singled out a particular piece of evidence and commented upon it and advised the jury in relation to how and under what circumstances it may be considered. The instruction is couched in general terms and the law covering the giving of an instruction such as the one in question may be found in 16 C. J., paragraph 2480, page 1040. (See, also, Randall on Instructions, par. 288, p. 559.)

Should the fact that the instruction could only apply to the testimony of one witness render it objectionable, then in many cases the court would be unable to give an instruction under circumstances where it had been held to be the duty of the court to give an instruction, for example: "It has been held that, where the evidence as to the confession is conflicting, the court should instruct the jury that they may consider all the evidence, and that if they do not believe that the confession was made freely and voluntarily, they must wholly disregard it." (16 C. J., par. 2421, p. 1003.)

It is therefore apparent that it is the terms of the instruction and not the number of witnesses to which it applies that governs. That this is recognized by the courts of this country is shown by the following cases: "In a criminal trial it is only proper to single out defendant's confession in the instructions for the purpose of submitting an issue as to whether proper warning was given defendant before he made the confession." (*Jordan* v. *State*, 51 Tex. Cr. 145, 101 S. W. 247.) "Where the testimony leaves it in doubt whether evidence offered was procured illegally, the court may instruct the jury to disregard such evidence if they believe it was improperly procured, but not if the disclosure was voluntary, accidental or without defendant's aid." (*Holloway* v. *State*, 16 Ga. App. 143, 84 S. E. 590; see, also, *Allen* v. *United States*, 164 U. S. 492, 41 L. Ed. 528, 17 Sup. Ct. Rep. 154 [see, also, Rose's U. S. Notes]; *Tatum* v. *State*, 131 Ala. 32, 31 South. 369; *Pittman* v. *Gaty*,

10 Ill. (5 Gil.) 186; 16 C. J., p. 986, par. 2392, and note 59 thereunder.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The defendants, charged with having stolen sheep, were found guilty by the verdict of a jury. By judgment they were sentenced to the state prison. Their motion for a new trial having been denied, they appealed to this court.

The sheep alleged to have been stolen were branded with a red bar and were the property of one Tom Hovland. A material witness for the state was one Henry C. Jones, who testified that at the time of the alleged theft he was working for the defendants, herding their sheep, which were branded with two black bars on the back. About October 27, 1926, the defendants sold several hundred sheep to Ole Hanson who shipped them out of the state. With these sheep were a number bearing the red bar brand. The red bar sheep, about twenty-five, the witness testified, were put with the defendants' sheep, herded by the witness, on the 5th or 6th of October, 1926, by defendant McComas. The circumstances were detailed, indicating a direct intention on part of both defendants to steal the sheep.

The witness, upon direct examination, testified that after
[1] the arrest of the defendants they came to see him at Bozeman, at which time they urged him to forget what he knew with respect to the matter; and that later, a week before the trial, they again sought him out, finding him near Columbus; they plied him with intoxicating liquor and by means of threats induced him to go to Columbus to the office of Mr. Parcells, where an affidavit drawn by that gentleman was read to the witness, in part at least. The witness did not want to sign it, and laid down the pen which he had in his hand; the defendant McComas "picked up the pen and kind of jogged me, saying, 'You know,'" and the witness signed.

Having been apprised of the existence of the affidavit the prosecuting attorney demanded it of defendants' counsel, who

produced it. The prosecuting attorney thereupon introduced it in evidence himself, thus anticipating its introduction by the defendants. In effect, the affidavit contained a denial of material parts of the testimony which the witness had detailed before the jury. Therein the witness said, among other things, that during all the times in question he had never seen any sheep in the band he herded for defendants, except those bearing the defendants' brand.

The court, over the objection of the defendants, gave the jury the following instruction, which is the sole error assigned: "If you believe beyond a reasonable doubt that any statement, declaration, or testimony in evidence before you was not voluntarily made, but was obtained by means of threats, force, or fear, sufficient to overcome the free will of the person by whom it is asserted that such statement, declaration, or testimony, if any, was made, or given, then you will disregard such evidence, if any, altogether, and the same will not be further considered by you in arriving at your verdict."

The defendants urge that the court thus committed error to their prejudice. The attorney general admits error, but attempts to maintain that it was nonprejudicial to the defendants. He says that the affidavit was admissible on part of the state for one purpose only,—to show the subsequent conduct of the accused, and he contends that the only effect of the instruction was to withdraw from the jury the right to consider the evidence as showing subsequent guilty conduct on the part of the accused, if the jury found the facts in connection with the execution of the affidavit were true as stated by the witness Jones. The court's action, says the attorney general, operated to the benefit of the defendants.

We are unable to appreciate the force of this argument. The affidavit was permitted in evidence and all of it was for the consideration of the jury. It was a part of the evidence in the case. The jury were entitled to consider it, and every statement in it, in the light of the circumstances under which it was made and the explanations given by the witness. It contained a statement under oath, made by the witness prior

to the trial, which was contradictory of the evidence the witness gave upon the trial. The case is no different than if the defendants had introduced the affidavit, for the purpose of impeaching the witness, and the witness had then given his explanation as to how it came to be made. The court erred in withdrawing from the consideration of the jury the evidence, whether voluntarily or involuntarily made and whether secured by means of threats or otherwise. It was the sole province of the jury to believe, or to disbelieve, the affidavit; to give it, or portions of it, credence, or no credence at all. If the jury saw fit to give the affidavit credence, even though it were obtained by force, or fear—and the jury had the right to give it credence even so—it would deem it evidence of an impeaching character, to some extent weighty. In peremptorily directing the jury, if it found certain facts, to disregard it altogether, the court invaded the province of the jury upon a material point, to the manifest prejudice of the defendants.

For this reason the judgment must be reversed and the cause remanded to the district court of Sweet Grass county, with direction to grant the defendants a new trial, and it is so ordered.

*Reversed and remanded.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.

Rehearing denied October 1, 1927.