TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00160-CR






Thomas Ray Wideman, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW OF COMAL COUNTY


NO. 95CR-1175, HONORABLE FRED CLARK, JUDGE PRESIDING






 The jury convicted appellant Thomas Ray Wideman of assault with bodily injury and
assessed his sentence at six months in jail, probated for two years. Appellant represented himself at trial. 
In four points of error, appellant contends that the evidence is legally insufficient and that the trial court
erred in permitting him to represent himself. The evidence is sufficient but the inquiries and admonishments
about self-representation were not. We will reverse and remand.


SUFFICIENCY OF EVIDENCE


 Appellant contends in his fourth point of error that the evidence is not sufficient to support
the jury's verdict of guilty. We address this issue first, because it could be dispositive of the case. See
Edmonson v. State, 951 S.W.2d 6 (Tex. Crim. App. 1997) (sufficiency review required even if conviction
reversed on another point of error).

 The critical inquiry on review of the legal sufficiency of the evidence to support a criminal
conviction is whether the record evidence could reasonably support a finding of guilt beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (l979); Griffin v. State, 614 S.W.2d 155, 159 (Tex.
Crim. App. 1981). The relevant question is whether, after viewing the evidence in the light most favorable
to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt. Griffin, 614 S.W.2d at 159 (quoting Jackson, 443 U.S. at 318-319).

 The information alleges that on November 8, 1995, appellant intentionally, knowingly or
recklessly caused bodily injury to Cheryl Wideman by kicking her pelvic area with his foot. Appellant
contends that the evidence is insufficient because his then-wife Cheryl testified that while she saw him step
back and his knee come up, she did not actually see his foot hit her. 

 The evidence shows that this assault was committed in the victim's home in the middle of
the afternoon. Cheryl and appellant were still married, but they were no longer living together. Cheryl
testified that there was a restraining order in effect and that he was not supposed to be there. Cheryl was
upstairs putting up the washing and watching her two-year-old grandson bathe when Thomas appeared. 
He began a dispute about a cordless phone that his mother had given them and that he wanted. Thomas
grabbed Cheryl and pushed her up against the wall and was yelling at her. She was frightened and just
wanted to get her grandson and leave the house to escape Thomas. She got the child and started down
the stairs. Appellant pushed and shoved her while she was going down the stairs but she made it to the
bottom. While still holding the child, she saw Thomas take a step back and then: "I saw his knee go up. 
I do not remember actually seeing his foot hit me. I felt a terrific burning, and I doubled over." She testified
that she felt the blow in her right groin area. It caused her a great deal of pain; she thought that she might
pass out and drop the child. She ran outside, and a neighbor driving by saw Cheryl in the middle of the
road screaming and took her to the neighbor's home. A deputy sheriff, EMS, and Cheryl's parents all
came and observed her distraught condition. The deputy testified that Cheryl told him that she had been
kicked in the groin. Cheryl's mother saw a bruise when she inspected Cheryl's pelvic area. We believe
that all the evidence, especially that which established that Cheryl saw appellant's knee coming up
immediately before she felt a kick to her groin, is sufficient to support the jury's verdict of guilty. A jury
is entitled to draw reasonable inferences from the facts proved and to take language at its ordinary meaning. 
Stanfield v. State, 213 S.W.2d 837 (Tex. Crim. App. 1948); Miller v. State, 909 S.W.2d 586, 593
(Tex. App.--Austin l995, no pet.). "Kick" means to thrust out or strike out the foot or feet with force. 
Webster's Third New International Dictionary 1240 (Philip B. Gove ed., 1961). It is not unreasonable
for the jury to infer that appellant's foot followed his knee in the circumstances described by Cheryl
Wideman. The fourth point of error is overruled.


RIGHT TO COUNSEL AND RIGHT TO REPRESENT SELF


 In his first three points of error, appellant contends that the trial court erred in permitting
him to waive his right to counsel and to represent himself at trial (1) without adequate inquiry into his
capacity to make such a decision; (2) without adequate admonishments of the dangers and difficulties of
self-representation; and (3) without adequate inquiry into appellant's possible indigency and without
advising him of the right to have the court appoint counsel if he could not afford to employ a lawyer.

 The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a
person brought to trial in any state or federal court must be afforded the right of assistance of counsel
before he can be validly convicted and punished by imprisonment. Faretta v. California, 422 U.S. 806,
807 (1975); Collier v. State, No. 72,406, slip op. at 6 (Tex. Crim. App. Dec. 18, 1997). The right to
counsel may be waived and the defendant in a criminal case may choose to represent himself at trial. 
Faretta, 422 U.S. at 806 (1975). In order to be constitutionally effective, a decision to waive the right
to counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. Collier, slip
op. at 7 (citing Godinez v. Moran, 509 U.S. 397, 400 (1993) and Faretta). The competence required
of a defendant seeking to waive his right to counsel is the competence to waive the right, not the
competence to represent himself. The defendant's technical legal knowledge is not relevant to an
assessment of his knowing exercise of the right to defend himself. Faretta, 422 U.S. at 836. The
appropriate question is whether the defendant is competent to choose the endeavor of self-representation. 
Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989). The standard of competency to waive
counsel is the same as that required to stand trial or to plead guilty; it is whether the defendant has sufficient
present ability to consult with his lawyer with a reasonable degree of rational understanding and has a
rational as well as factual understanding of the proceedings against him. Godinez v. Moran, 509 U.S. at
369-402. See Tex. Code Crim. Proc. Ann. art. 46.02, § 1 (West 1979) (codification of the same
standard). A finding of competency to stand trial is not all that is necessary before a defendant may waive
his right to counsel. In addition, the trial court must satisfy itself that the waiver is knowing and voluntary. 
Godinez, 509 U.S. at 400. The purpose of this latter inquiry is to determine whether the defendant actually
does understand the significance and consequences of a particular decision and whether the decision is
uncoerced. Id. at 401, n.l2.

 While an accused has the right to waive counsel, waiver is not to be lightly inferred. Boyd
v. Dutton, 405 U.S. 1, 3 (1972). Simply failing to request that a lawyer be appointed cannot be the basis
for concluding that a defendant knowingly, voluntarily, and intelligently relinquished or abandoned his right
to the assistance of counsel. Swenson v. Bosler, 386 U.S. 258, 260 (1967); Ex parte Rains, 555
S.W.2d 478,482 (Tex. Crim. App. 1977). "[I]t is essential that no criminal defendant be subjected to
formal adversarial judicial proceedings without a lawyer unless there is a basis for concluding that he
knowingly, voluntarily, and intelligently relinquished or abandoned his right to the assistance of counsel." 
Oliver v. State, 872 S.W.2d 713, 715 (Tex. Crim. App. 1994). Texas law is consistent with the federal
constitutional requirements for protecting the right to counsel. Id. See Tex. Const. art. I, § 10; Tex. Code
Crim. Proc. Ann. art. 1.051 (West Supp. 1998).

 The exact nature of the inquiry to be made by a trial court to determine whether a
defendant's waiver of counsel has been made knowingly, intelligently, and voluntarily is not settled in Texas. 
The Court of Criminal Appeals has held that Faretta does not require an inquiry concerning appellant's
age, education, background, or previous mental health history in every instance where a defendant
expresses a desire to represent himself, for the record may otherwise be sufficient for the Court to make
a knowing assessment of his knowing exercise of the right to defend himself. Martin v. State, 630 S.W.2d
952, 954 (Tex. Crim. App. 1982). While no specific inquiry is mandated, the record must contain sufficient
proper admonishments concerning pro se representation and any necessary inquiries of the defendant so
the trial court may make an assessment of his knowing exercise of the right to defend himself. Geoffney
v. State, 843 S.W.2d 583, 584-85 (Tex. Crim. App. 1992). A mere recitation in the judgment that the
defendant knowingly, intelligently and voluntarily waived his right to counsel is not sufficient. The record
must contain the admonishments. Id. A trial court need follow no "formulaic questioning" or particular
"script" to assure itself that an accused who has asserted his right to self-representation does so with his
eyes open. Burgess v. State, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). While refusing to "author
a script for courtroom recitation by trial judges," the Court of Criminal Appeals has said that a trial court
is not authorized "to sit idly by doling out enough legal rope for defendants to participate in impending
courtroom suicide," and that "judges must take an active role in assessing the defendant's waiver of
counsel." Blankenship v. State, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). "A judge must
investigate as long and as thoroughly as the circumstances of the case before him demand. . . . A judge
can make certain that an accused's professed waiver of counsel is understandingly and wisely made only
from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered."
 Blankenship, 673 S.W.2d at 583 (quoting Von Moltke v. Gillies, 332 U.S. 708, 723 (1948)). A
defendant must be made aware of the dangers and disadvantages of self-representation so the record will
establish that he knows what he is doing and his choice is made with eyes open. Johnson v. State, 760
S.W.2d 277, 278-79 (Tex. Crim. App. 1988). Generally, the record must be sufficient for the reviewing
court to make an assessment that the defendant knowingly exercised his right to defend himself. 
Admonishments should include an effort to ensure that he is aware of the practical disadvantages of self-representation. He should be aware that there are technical rules of evidence and procedure and that he
will not be granted any special consideration because of his exercise of his pro se rights. His eyes should
be open to the fact that he is about to embark on a risky course. Id. at 279. Article 1.051 of the Code
of Criminal Procedure sets out a written warning and waiver, but does not require a specific inquiry into
competency. Therefore, we must determine what inquiries were made and what warnings and
admonishments were given to appellant in this case, and whether they were adequate.


BACKGROUND
 

 Appellant was represented by employed counsel for several months. This attorney moved
to withdraw from representation of appellant on September 17, 1996. The trial court granted the motion
on September 23, 1996. The docket sheet shows notices of setting for jury trial were sent on September
l8 and 24, 1996. While the case was set for jury trial immediately after appellant's attorney withdrew,
nothing in the record indicates that the trial court made any inquiry of appellant at the time his lawyer
withdrew, or at any other time over the next two months, about what appellant intended to do about legal
representation in the scheduled jury trial. There is no record showing that the court inquired, admonished,
or advised appellant about the importance of being represented by counsel until the day of jury selection. 
There is a document filed December 9, 1996, entitled "Order for Pro Se Representation." It is signed by
appellant and the trial court. It recites that appellant declared the following in open court:


 1.  I am fully aware of the offense of which I am charged. 2.  I am fully aware of the range
of punishment. 3.  I have never experienced any mental or emotional problems, been
judged incompetent, or consider myself illiterate. 4.  I have been advised that there are
numerous technical rules governing the conduct of trial (as to procedure, admission of
evidence, etc.). And that 'presenting a defense is not a simple matter of telling one's
story': [punctuation sic]. 5.  I have been duly advised of the dangers and disadvantages
of self-representation. 6.  I freely, voluntarily and without duress and with knowledge of
the consequences thereof, hereby waive my right of counsel.


 The Court having taken every measure to try and advise the defendant against
representing himself and advising him of the disadvantages, the defendant proceeded to
announce in open court of [sic] his wish to represent himself.



 The reporter's record does not contain the in-court declaration this document purports to
memorialize, and the record does not otherwise reflect the circumstances under which this document was
signed. At the hearing on appellant's motion for new trial, appellant testified that when the docket was
called and before the jury was selected, he read and signed the order of pro se representation and gave
it to a clerk who gave it to the judge.

 The following proceedings were had in court when the case was called for jury selection
and just before that process began: 


THE COURT:  You're representing yourself, Mr. Wideman?


THE DEFENDANT:  Yes, sir. 


THE COURT:  All right. And you're ready to proceed today, jury selection?. . .
[appellant asks court to dismiss charges against him, court declines. Court establishes that
State is ready for trial.]


THE COURT:  You're charged with assault with bodily injury. You don't have a lawyer
representing you? It's a Class A --


THE DEFENDANT:  I can't afford this anymore --


THE COURT:  -- misdemeanor.


THE DEFENDANT:  -- sir.


THE COURT:  Most people tell me they can't afford it.


THE DEFENDANT:  I understand but --


THE COURT:  Doesn't mean they're indigent or -- it just means that they don't want to
spend their money doing this.


THE DEFENDANT:  Sir, I've already spent $2,000.00 on this; and there's no grounds
for this. I have --


THE COURT:  We'll find out.


THE DEFENDANT:  . . . [starts to discuss evidence in case].


THE COURT:  Yeah. Okay. Just a minute. Mr. Wideman, look. Here's the thing, Mr.
Wideman. It's true that people have the right to represent themselves and --


THE DEFENDANT:  Yes, sir. 


THE COURT:  -- I have no problem with that. It's a constitutional right. And you're not
prejudiced from the Court's standpoint in representing yourself. And, on the other hand,
you get no special treatment or benefit just because you do represent yourself.


THE DEFENDANT:  I understand that, sir. 


THE COURT:  All the rules apply to you like they apply to everybody else, and

that's what I'm going to do. I'm going to apply all the rules to you, just like you had
Racehorse Haynes here today representing here.


THE DEFENDANT:  Okay. 


THE COURT:  You don't get any special treatment whatsoever, nor do you get
prejudiced by it. But you're not going to be able to ask me for advice or what to do or
when to do it or anything like that. The State's announcing ready?


[THE STATE]:  Yes, sir.


THE COURT:  And you're announcing ready so --


THE DEFENDANT:  When did I -- okay. If I wanted to get an attorney, when could this
--


THE COURT:  Oh, it's too late for that.


THE DEFENDANT:  Okay.


THE COURT:  The case is set --


THE DEFENDANT:  All right. 


THE COURT:  -- for trial today.


THE DEFENDANT:  Good. Let's do it. 



 Self-representation was mentioned briefly again just before voir dire began that day. The
trial court simply noted that the file showed that at one time appellant had a lawyer, but that there had been
a motion to withdraw, and that the court had granted the motion. The court noted that the withdrawal
occurred in September l996 and that appellant still didn't have a lawyer two or three months later. There
was no discussion of why appellant did not or could not keep that lawyer or what he may have done about
finding another. The jury was then selected on December 9, 1996, and the trial began two days later.

 After trial, a hearing was held on appellant's motion for new trial. The subject of the motion
and hearing was the circumstances of appellant's waiver of counsel and his self-representation. At this
hearing, appellant testified that his retained lawyer ceased to represent him because appellant "ran out of
money." He said that the trial court did not order him to obtain another lawyer after his first one withdrew. 
He said that the court did not admonish him about the dangers of self-representation until the day the trial
began with jury selection. He stated that after the judge warned him about the dangers of representing
himself and the way it was presented he felt that he had "better get some representation." However, when
he asked the judge for a continuance the court told him that he had waived his rights. Appellant testified
that if the court had admonished him earlier he would have retained an attorney.

 The Court of Criminal Appeals said in Oliver v. State, "it is essential that no criminal
defendant be subjected to formal adversarial judicial proceedings without a lawyer unless there is a basis
for concluding that he knowingly, voluntarily, and intelligently relinquished or abandoned his right to the
assistance of counsel." 872 S.W.2d at 715. In the case before us, there was no inquiry made to determine
whether there was a basis to make such a determination until the day appellant appeared for a jury trial
without a lawyer. There is no record of any timely inquiry or warnings about waiving the right to counsel. 
The trial day admonishment that appellant should have retained a lawyer long ago is clearly insufficient. 
Unless the appellant actually has an opportunity to act on the trial court's advice about the dangers and
disadvantages of self-representation, the only thing such warnings could do is create anxiety and add to the
coercive circumstances which indicate that appellant's "choice" to waive counsel was not truly voluntary.

 The record does not show an inquiry into appellant's capacity to make the decision to
waive counsel in an intelligent, knowing and informed way. Nothing in the record provides any information
about the appellant's capacity to make a decision to waive counsel. The record is silent regarding
appellant's education, occupation, background, age, or ability to handle his own affairs. There is no
indication that appellant had any previous experience in court. Faretta does not mandate an inquiry
concerning appellant's age, education, background or previous mental health history in every instance
where an accused expresses a desire to represent himself. Martin v. State, 630 S.W.2d 952, 954 (Tex.
Crim. App. 1982). However, the record must contain proper admonishments and any necessary inquiries
so the trial court may assess his knowing exercise of the right to defend himself. Geoffney, 843 S.W.2d
at 584-85. Trial judges must take an active role in assessing the defendant's waiver of counsel. 
Blankenship, 673 S.W.2d at 583. The record must establish that "he knows what he is doing and his
choice is made with eyes open." Faretta, 422 U.S. at 833. No such assessment was made here.

 The record before us does not reflect that appellant's decision to represent himself was
made voluntarily and with a full understanding of the consequences. This was a violation of appellant's
substantial rights. See Tex. R. App. P. 44.2(b). Accordingly, we sustain appellant's first and second points
of error. We need not address point of error three.

 The judgment of conviction is reversed and the cause is remanded for a new trial.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Reversed and Remanded

Filed: March 12, 1998

Do Not Publish



.


THE DEFENDANT:  Good. Let's do it. 



 Self-representation was mentioned briefly again just before voir dire began that day. The
trial court simply noted that the file showed that at one time appellant had a lawyer, but that